# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

WADLEY DEERE, )
　)
　　　Plaintiff, )
　)
vs. ) Case No. 10-CV-333-TLW
　)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
　)
　　　Defendant. )

## OPINION AND ORDER

Plaintiff Wadley Deere seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 416(i) & 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 14].

This case has a lengthy procedural history. Plaintiff applied for disability insurance benefits on June 7, 2005, claiming a disability onset date of April 1, 2003, from post-traumatic stress disorder ("PTSD"), diabetes mellitus II, high blood pressure, and heart impairment. [R.68, 78, 492]. His claim was denied initially and on reconsideration. After conducting a hearing on June 13, 2007, the Administrative Law Judge ("ALJ") entered an order denying benefits. [R. 471, 16]. The Appeals Council denied review and plaintiff filed an appeal to this federal district court. [R. 4]. The case was remanded upon motion of the Commissioner with specific directions for the ALJ to conduct a new hearing to consider each of the following factors:

(1) the nature and severity of plaintiff's impairments;

(2) reevaluate plaintiff's residual functional capacity ("RFC")[1];

(3) provide the rationale for his conclusions regarding plaintiff's RFC;

(4) obtain supplemental evidence from the vocational expert to determine whether plaintiff can perform his past relevant work;

(5) pose a hypothetical question to the vocational expert that includes all of plaintiff's functional limitations to determine whether other jobs exist in significant numbers that plaintiff can perform; and

(6) conduct any additional development of the administrative record that may be appropriate and necessary.

See Deere v. Astrue, Case No. 08-CV-564-PJC. [Dkt. # 21]. The same ALJ was reassigned to the case. After conducting a second hearing, the ALJ entered a decision on February 26, 2010, denying benefits. [R. 2052, 2062, 551]. Plaintiff did not file exceptions, and the Appeals Council did not assume jurisdiction, thereby making the ALJ's 2010 decision the final decision of the Commissioner. 20 C.R.F. § 404.984 (d). On May 25, 2010, plaintiff filed the subject action with this Court. [Dkt. # 2].

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993). The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful

---

[1] RFC is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).

2

activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988)).

A claimant for disability benefits bears the burden at step one through step four of the sequential evaluation to prove that he is disabled. 42 U.S.C. § 423 (d)(5). At step five, if a claimant has established that he has a severe impairment which prevents him from returning to his past relevant work, the burden shifts to the Commissioner to show that the claimant retains the capacity to do other work that exists in the national economy – taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally Williams v. Bowen, 844 F.2d at 751.

Plaintiff must provide medical evidence of his mental and physical impairments and the severity of his impairments during the relevant adjudicated period. The adjudicated period in this case is from the alleged onset date of April 1, 2003 through the date last insured on December 31, 2003; and then plaintiff must show that his disability lasted for at least 12 continuous months thereafter. An initial critical issue in this case is whether the onset of plaintiff's alleged inability to work commenced before the cut off of his date last insured on December 31, 2003.

This court reviews the ALJ's decision only to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards. See O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Id. In making this determination the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. See Thompson, 987 F.2d at 1487.

In this appeal, plaintiff claims the ALJ erred by: (1) failing to comply with the procedural requirements in 20 C.F.R. § 404.1520a for evaluating mental impairments; (2) failing to base his RFC assessment on all the relevant evidence; (3) finding plaintiff can perform his past relevant work; and (4) finding that plaintiff has transferrable job skills. [Dkt. # 17 at 5-9].

**Background**

Plaintiff was born on June 26, 1946. [R. 68, 499]. He was 56 years old on April 1, 2003, his alleged disability onset date. Plaintiff completed a carpentry apprenticeship in the 1960's. [R. 83]. From May 24, 1968 until May 17, 1972, plaintiff served in the Marine Corps, with one year of active combat in Vietnam. [R. 68, 117, 521]. In 1968, he received vocational training at the Haskell Institute for auto-mechanics, engineering, equipment, and general mechanics. [R. 83]. In 1969, he received leadership training at the NCO Academy in Hawaii.[2] [R. 83]. Following discharge from service, plaintiff married on January 24, 1974. He and his wife have one son. [R. 69]. Plaintiff's earning statements show continuous employment from 1969 until 2002. [R. 74]. Plaintiff was employed in various jobs in the construction industry from 1990 until 1999. [R. 79]. From 1995 to 1997, plaintiff attended college, and received a Bachelor Degree from Southern Nazarene University, in Human Services. [R. 499, 122, 462]. Following graduation, from 1999 until 2002, he was employed by the Muscogee (Creek) Nation, as a case worker with Indian Child Welfare

---

[2] NCO Institute is a governmental facility for the U.S. Amy which trains Non Commissioned Officer leadership skills.

Services. [R. 122]. He described his job as taking children away from their parents, and highly stressful. [R. 79, 122]. Plaintiff and his wife went through a lengthy separation, followed by a lengthy divorce proceeding. The divorce was filed in October 2003, and was still "in process" in January of 2006. [R. 182, 1184, 51, 138, 512]. At the hearing on November 2007, plaintiff testified he was divorced. [R. 521].

As early as 1966, plaintiff was diagnosed with service-related prolonged post traumatic stress syndrome. [R. 282]. He has a family history of cardiac disease and had a stent placement in September 2003. [R. 186]. In 2006, plaintiff had open heart surgery. [R. 522]. In 1978, plaintiff was diagnosed with diabetes II and in 1985 he became insulin dependent. [R. 137]. In June 2002, plaintiff missed a chair when sitting down and fell to the floor. He sought treatment for back and hip pain. He subsequently complained of pain radiating from his back, left hip and down his legs. [R. 216, 221, 225, 227]. However, plaintiff expressed that he wanted to continue to work with the Indian Tribe and perform his voluntary duties as state commander for the Veteran's Administration ("VA"). [R. 225]. It was noted he had a GAF score of 65 for the past year and current.[3] [R. 225] In July 2002, plaintiff was terminated from his position as case worker with the Indian Tribe for missing work due to PTSD. [R. 463]. It is noted that the increase in severity of his PTSD was primarily attributed to his health (being insulin dependent) and his unsuccessful effort to find

---

[3] A global assessment of functioning score ("GAF") is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. A GAF score of 51-60 indicates moderate symptoms, such as flat affect or moderate difficulty in social, occupational, or school functioning, few friends and conflicts with peers or co-workers. A GAF score of 61-70, is indicative of mild symptoms such as depressed mood and mild insomnia or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000).

employment. [R. 458]. In March 2002, his leg pain was attributed to complications from diabetes. [R. 234]. On October 29, 2002, plaintiff reported he left his job as a case worker due to "stressors and problems there" and was looking for other employment. [R. 214]. He was having difficulty finding a job but felt positive he would secure one. [R. 214]. On January 14, 2003, examination notes read:

> PT doing relatively well other than his diabetes which has been a problem. He is having eye problems as well as neuropathy. He is looking for another job and would like to get a federal job. He is almost out of his medication and missed his appmt [sic] in December with Dr. Grayson as he was out of town. He is taking Trazodone 100 mg hs, Prozac 20 mg qd and Buspar 15 mg tid. PT alert, verbal and cooperative. He continues to have active PTSD symptoms with which he "manages." There are some triggers which exacerbate the symptoms periodically, such as he recently saw a movie about Viet Nam, "We Were Soldiers."

[R. 206]. On May 12, 2003, plaintiff reported he tried unsuccessfully for the past year to obtain employment. [R. 458].

Sometime prior to 2003, the VA rated plaintiff as service-related partially disabled. On April 8, 2003, plaintiff filed an application with the VA to increase his disability rating. [R. 117]. On August 20, 2003, the VA denied increasing plaintiff's 20% disability rating for his diabetes mellitus II, but granted an increase from 50% to 70% disability rating for PTSD, and allowed his claim for diabetes related impotency. [R. 115-118]. The VA decided plaintiff's service-related disabilities were sufficiently severe to prevent him from seeking and maintaining employment and changed his status to 100% Individual Unemployability, effective April 8, 2003.[4] [R. 115]. However, the VA

---

[4] The following explanation accompanied the VA's determination of 70% PTSD service related disability:
  An evaluation of 70 percent is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant;

6

found plaintiff did not qualify for a 100 % PTSD disability rating. "A higher evaluation of 100 percent is not warranted unless there is total occupational and social impairment due to such symptoms as: [inter alia] gross impairment in thought processes or communications, grossly inappropriate behavior, and intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene)." [R. 118]. Plaintiff's alleged social security disability onset date of April 1, 2003, corresponds with the April 8, 2003 date the VA granted plaintiff unemployability status. On October 6, 2003, plaintiff advised his mental health councilor, Nurse Janet Gearin, that he recently "retired" and was now on full disability. Nurse Gearin's notes read:

> He is beginning to feel better emotionally without having the strain of trying to work. His son is living with him in an apartment and they are doing very well. He will soon be filing for divorce from his wife from whom he has been separated for some time. He is still taking his medication though admits not as frequently as he needs. He is scheduled to see the PA here next month for further medication . . . GAF past year and current 60.

[R. 184]. Nurse Gearin assessed plaintiff with a GAF score of 65 as of June 25, 2001 through June 25, 2002; and a GAF score of 60 as of October 6, 2002 through October 6, 2003. [R. 225, 184].

## Decision of the ALJ

Two medical experts testified at the hearing in 2007: Dr. John Hickman, PhD, a clinical psychologist [R. 523-8] and Subramanian Krishnamurthi, MD, an internist and cardiologist [R. 528-31]. Dr. Krishnamurthi also provided testimony at the 2009 hearing. [R. 2090-96]. In his February 2010 decision [R. 551-62], the ALJ adopted the findings of fact and conclusions of law entered in

---

near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. [R. 118]

his November 2007 decision. [R. 556, 16-26]. He re-applied the five-step sequential evaluation process required by <u>Williams v. Bowen</u> and found plaintiff was not disabled prior to December 31, 2003. At step one, he found that plaintiff had not engaged in substantial gainful employment since April 1, 2003, the alleged onset date. [R. 557]. At step two, he determined plaintiff's severe impairments, during the relevant period, to be diabetes mellitus, status-post left heart catheterization with stent and PTSD. At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Commissioner's listed impairments. In so finding, the ALJ rejected the assessment of Dr. Hickman, who opined that plaintiff's symptoms of PTSD met listing 12.06 (anxiety related disorders).[5] Dr. Hickman based his opinion on plaintiff's hearing testimony; the 2003 statements furnished to the VA by William Love, MD (plaintiff's treating physician); Janet Gearin, (plaintiff's nurse practitioner); and Robert Billingsley, MD, (VA consultant); and Dr. Billingsley's May 2003 assessment of a GAF score of 45. [R. 523-527, 458-463].

      The ALJ rejected Dr. Hickman's opinion. He supported his decision by entering extensive factual findings highlighting plaintiff's engagement in activities of daily living and social functioning; showing that the VA medical source statements were inconsistent with plaintiff's

---

[5] Dr. Hickman opined plaintiff's symptoms of PTSD satisfied the evidentiary requirements of 12.06 A(1) subpart a through d which requires evidence of, "Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: motor tension; or autonomic hyperactivity; or apprehensive expectation; or vigilance and scanning." As well as A(3), "Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week;" and A(4), "Recurrent obsessions or compulsions which are a source of marked distress;" and A(5), "Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." [R. 19]. Dr. Hickman further opined that the part "B" criteria were met, specifically B(2), "Marked difficulties in maintaining social functioning;" and B(3), "Marked difficulties in maintaining concentration, persistence or pace." [R. 19].

8

activities and functioning in 2003; showing that the medical source statements conflicted with the medical records maintained by Nurse Gearin and Dr. Love; and illustrating that plaintiff's GAF score of 60 on October 2003 showed only a moderate limitation in his ability to function. [R. 19-22, 557]. The ALJ declined to impose any limitations for psychological impairment for the period April 1 through December 31, 2003. [R. 557].

At step four, the ALJ found that plaintiff retained the RFC to sit 6 hours in an 8 hour day; stand and walk 4 hours (combined) in an 8 hour day; frequently lift 10 pounds and occasionally lift 20 pounds; occasionally bend, stoop and crawl; limited only by avoidance of extremes of heat and cold. The ALJ adopted the physical RFC assessment of Dr. Krishnamurthi. [R. 557-559]. After consulting a vocational expert, and considering plaintiff's RFC, age, education and work experience, the ALJ determined, between April 1, 2003 and December 31, 2003, that plaintiff retained the capacity to return to his past work as a case worker. In addition, the ALJ determined plaintiff possessed transferrable job skills, to include: dealing with the general public, operating office equipment, supervision and counseling. [R. 560].

At step five, the ALJ entered an alternative finding, that plaintiff retained the capacity to perform sedentary, semi-skilled work, such as a telephone solicitor, outside sales representative and/or a motel night clerk. [R. 561]. The ALJ concluded plaintiff was not disabled as defined under the SSA, between April 1, 2003 and December 31, 2003.

## Discussion

As his first assignment of error, plaintiff claims the ALJ failed to comply with the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and in the Listing of Impairments, and the ALJ failed to document the procedure accordingly. This procedure requires

9

the ALJ to follow a "special technique" to evaluate plaintiff's mental functional capacity in the areas of activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

To establish his claim for mental impairment, plaintiff relied on the information in the medical source statements prepared for the VA for service-related disability. In Nurse Gearin's letter dated May 12, 2003, in which she based her opinion on her ten year relationship with plaintiff as a patient at the VA Outpatient Clinic in Tulsa, she stated, "It is my opinion that his PTSD be rated as severe and chronic. Mr. Deere is considered to be totally disabled by his PTSD and is not able to either obtain and/or maintain gainful employment at this time." [R. 458]. Dr. Billingsley's May 22, 2003 statement, based on his review of plaintiff's outpatient treatment records from the Muskogee VA Medical Center, shows a diagnosis of PTSD from results of three Compensation and Pension ("C&P") Examinations. Dr. Billingsley opined that plaintiff's PTSD increased in severity in 2003 due to his constant exposure to extreme poverty and abused children as a case worker for the Indian Tribe. Dr. Billingsley opined plaintiff's past work appeared to exacerbate his symptoms of PTSD. Specifically, Dr. Billingsley said:

> He has difficulty being angry, irritable, and short-tempered, alluding to difficulty both in the work place and in his marriage. The patient has difficulty with concentration and focus. He is hypervigilant, constantly having to scan his perimeter, and he startles quite easily. The patient is currently receiving outpatient care at the Tulsa outpatient VA medical center. He is being treated with antidepressant Trazodone, and the anxiolytic Buspar.

[R. 462]. Dr. Love's letter is dated July 20, 2007, and indicates that he had been plaintiff's personal care physician since November 28, 1997. Dr. Love commented that it would be "reasonable to surmise that Mr. Deere was not able to function in a stressful work environment on December 31,

10

2003 and for some time thereafter. I believe that poor diabetic control could certainly affect his mental and physical performance and that stress could cause angina." [R. 468].

Plaintiff claims the ALJ erred in evaluating his mental RFC since he met his burden of offering evidence of a mental impairment. Plaintiff claims the ALJ should have utilized the "special technique" at step three when evaluating his mental impairment. He argues the ALJ failed to make specific findings as to what rating he assigned to his PTSD in the areas of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. The Court agrees.

The ALJ found that plaintiff's PTSD was a severe impairment, but he did not consider plaintiff to have any mental limitation to include in his RFC assessment. As to mental functioning, the ALJ stated:

> I decline to impose any limitations for psychological impairments as the evidence of record for the period April 1 through December 31, 2003 does not show any significant psychological impairment sufficient to give rise to limitations which affect basic work activities. In reaching this conclusion I point not only to the medical/psychological evidence of record itself, but also to Mr. Deere's testimony of his daily activities; described both below and in the November 2007 Decision, which plainly demonstrate an ability to function at a competitive level and not disability.

[R. 557]. The ALJ did not ask Dr. Hickman to give an opinion regarding plaintiff's mental RFC. The ALJ did not complete a Psychiatric Review Technique Form ("PRT Form") nor was a PRT Form completed by an agency consultant. In 2005, two agency physiologists were requested by the Commissioner to complete a PRT Form; however, both experts declined to complete the forms noting insufficient evidence of plaintiff's psychological condition between April 1, 2003 and December 31, 2003. Specifically, on July 15, 2005, agency consultant Janice Smith, PhD declined

11

to complete the PRT Form, simply stating:

> 58 year old alleging PTSD, diabetes, high blood pressure, and stent in heart. The claimant's DLI [date last insured] is 12/31/03. During the period, all the claimant's medical treatment was at VA hospitals or VA Outpatient Clinic. The claimant was being treated for PTSD during that time, however, we do not have sufficient medical to establish disability.

[R. 362]. On November 30, 2005, agency consultant Margaret McKinney, PhD opined that plaintiff had an anxiety-related disorder; but she found insufficient evidence to complete a medical assessment. Although Dr. McKinney did not assess plaintiff's degree of functional limitations, she acknowledged plaintiff's PTSD, saying: "Anxiety as the predominant disturbance or anxiety experienced in the attempt to master symptoms as evidence by . . . recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." [R. 369].

The ALJ simply stated that he declined to impose any limitations for psychological impairments because the evidence did not show any significant psychological impairment sufficient to limit basic work activities. [R. 557]. The ALJ also rejected Dr. Hickman's opinion that plaintiff's PTSD met Listing 12.06. The ALJ recited facts to support his conclusion, but he did not separately rate plaintiff's mental functional capacity. The ALJ's mere dismissal of the issue is deficient when there is medical evidence of a diagnosis of PTSD. "Under the regulations, when evaluating a mental impairment, the agency must follow the 'special technique' set forth in 20 C.F.R. §§ 404.1520a(a) and 416.920a (a)." Stokes v. Astrue, 274 Fed. Appx. 675, 679 (10th Cir. 2008) (unpublished).[6] "Under this technique, the agency is required to rate the degree of a claimant's functional limitations caused by those impairments in the areas of activities of daily living; social functioning;

---

[6] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)." Id. At step two, the ALJ found that plaintiff's PTSD is a severe impairment, and at step three he found that this impairment did not meet the requirements of Listing 12.06, but he erred, thereafter, in failing to include a "specific finding as to the degree of limitation in each of those functional areas." Id.

The agency argues that this error is harmless because the ALJ discussed plaintiff's diagnosis, the pertinent findings, the lack of resulting functional limitations and found that his PTSD did not limit his ability to perform basic work activities. [Dkt. # 21 at 6]. Regardless of the lengthy factual findings entered by the ALJ, he failed to rate each one of plaintiff's mental functional capacities to accommodate a meaningful judicial review. The only exception to applying this regulatory requirement is if the federal courts could "confidently say that no reasonable administrative factfinder following the correct analysis, could have resolved the factual matter in any other way." Id. In this case, as pointed out by the ALJ, the medical evidence as to the limiting effect of plaintiff's mental functioning is clearly conflicting. "At the ALJ hearing level, the ALJ may prepare the PRT Form with or without the assistance of a medical advisor and must append the form to his decision. 20 C.F.R. §§ 404.1520a(d), 416.920a(d)." Bunch v. Chater, 91 F.3d 159 (10th Cir. 1996) (unpublished).

In Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996), the Tenth Circuit held that the ALJ must make specific RFC findings. Moreover, the ALJ failed to comply with the remand directives of this Court by failing to apply the correct legal standard in evaluating the nature and severity of plaintiff's impairments. See infra p. 1(1). Accordingly, the Court remands this case to the Commissioner to apply the correct legal standard in evaluating plaintiff's mental functioning.

As his second issue, plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence. The ALJ determined that plaintiff could sit for 6 hours in an 8 hour day and could stand or walk 4 hours (combined) in an 8 hour day. In making this assessment, the ALJ relied on the opinion provided by Dr. Krishnamurthi at the hearing. Plaintiff argues that when Dr. Krishnamurthi was directed to factor in plaintiff's complaints of arthritis, he reduced plaintiff's ability to stand or walk from 4 hours to 2 hours. Plaintiff claims the ALJ erred in failing to address Dr. Krishnamurthi conflicting opinions. The Court agrees. Although the ALJ clearly set forth the evidence he relied on to support his RFC assessment as to plaintiff's physical capacity to function, he failed to state why he rejected Dr. Krishnamurthi's second opinion. Moreover, the ALJ failed to comply with the remand directives to reevaluate plaintiff's RFC and provide the rationale for his conclusions regarding his assessment. See infra p. 2(2). The ALJ's failure to reconcile Dr. Krishnamurthi's conflicting testimony falls short of this directive. On remand, the ALJ is directed to enter additional factual findings to resolve this conflicting evidence.

As his third issue, plaintiff argues the ALJ's finding that plaintiff can perform his past work as a case worker is not supported by substantial evidence because the ALJ failed to determine the physical and mental demands of his past work as a case worker for the Indian Tribe. The Court agrees.

The evidence is clearly conflicting as to whether plaintiff could meet the mental requirements of his former job as a case worker. As the ALJ pointed out, plaintiff's activities and social engagement, during the relevant time, supported a finding that he had the capacity to work. However, conflicting evidence shows that plaintiff either quit his former job or was terminated purportedly due to the stress of taking children away from their parents. Dr. Billingsley opined that

14

plaintiff's PTSD may impact his ability to concentrate. [R. 462]. Although the ALJ entered extensive findings regarding plaintiff's busy schedule of daily activities and his various social functions, he failed to factor whether plaintiff's PTSD had any impact on his concentration, pace and persistence to perform his past job as a case worker. Moreover, Dr. Love "surmised" that plaintiff was not able on December 31, 2003 to function well in a stressful work environment. [R. 468]. Dr. Love was plaintiff's treating physician during the relevant time. On remand, the ALJ is directed to apply the correct legal standard, by rating each of plaintiff's functional capacities, prior to entering his determination whether plaintiff's has the mental capacity to return to his past work as a case worker. As noted above, a prerequisite as to whether plaintiff can return to his past work is for the ALJ to complete a proper PTR Form. In addition, the ALJ is directed to analyze Dr. Love's statement of July 20, 2007 [R. 468] under the treating physician rule; or enter factual findings or legal support to justify rejecting Dr. Love's classification as plaintiff's treating physician.

As his fourth issue, plaintiff claims the ALJ's finding that plaintiff had transferable job skills is not supported by substantial evidence. The ALJ determined plaintiff's transferrable skills to be: dealing with the general public, operating office equipment, supervision, counseling, reading and writing reports. The ALJ relied on the vocation expert who opined that with these skills, plaintiff could work as a telephone solicitor, (sedentary), outside sales representative (light), and motel night clerk (light). The vocation expert said that there was "more than very little adjustment required for the plaintiff to use his skills in the new position." Plaintiff claims that a transition to sedentary work, at his age of 56, would require "very little" adjustment, rather than "more than very little adjustment." Plaintiff claims this later standard applies only to light exertional work. Plaintiff faults the ALJ for not asking the vocational expert's opinion on the ability of plaintiff to perform light

15

exertional work. On remand the ALJ is directed to clarify in his decision whether plaintiff retains the functional capacity to perform light and/or sedentary exertional work. As previously directed, the ALJ must complete a PRT Form, documented by supporting evidence, as a prerequisite to formulating his hypothetical to the vocational expert.

## Conclusion

ACCORDINGLY, IT IS THE ORDER OF THE COURT that this case is hereby REVERSED and REMANDED to the Commissioner of Social Security for additional proceedings consistent with this Order and Opinion.

SO ORDERED this 30th day of September, 2011.

_____
T. Lane Wilson
United States Magistrate Judge